**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

          Plaintiff(s),         **CASE NUMBER: 06-20050
                                     HONORABLE VICTORIA A. ROBERTS**

**v.**

**WILLIE PARKER,**

          **Defendant(s).**
_____/

**ORDER**

**I.    INTRODUCTION**

Defendant Willie Parker was charged in a one-count indictment as a felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1). Defendant pled guilty without a Rule 11 Plea Agreement.

On March 7, 2007, Defendant appeared for sentencing. The probation department calculates his Sentencing Guideline Range to be 37 to 46 months (criminal history category I, offense level 21). The calculation includes a 4-point offense level enhancement for Defendant's possession of eight firearms. *See* Presentence Investigation Report ("PSIR") at ¶14. The enhancement is recommended pursuant to U.S.S.G. § 2K2.1(b)(1)(B), which requires a 4-point increase if 8 to 24 firearms are involved. At sentencing, however, Defendant argued that the Court should not apply the enhancement because he was not aware of, and consequently was not in possession of, all eight firearms. The Government asserted that: 1) Defendant's plea

1

was an admission that he possessed all eight firearms and he is bound by that admission, and/or 2) there is ample evidence that Defendant actually and/or constructively possessed all of the firearms. The Court permitted the parties to brief the matter.

There are three issues: 1) whether Defendant can at sentencing dispute the assertion in the Indictment that he possessed eight firearms when he pled guilty to the allegations in the Indictment, 2) if he can, how many firearms are attributable to him for sentencing purposes, and 3) whether the Court should apply any 18 U.S.C. §3553(a) factors to sentence Defendant outside the applicable Guideline range.

**A.    Defendant is not Precluded from Disputing Number of Firearms**

The Government is correct that a defendant typically is not at liberty at sentencing to disclaim knowledge of the facts which formed the basis of his plea. A defendant is "bound at sentencing by factual allegations that establish an element of the crime which he has admitted on pleading guilty." *United States v Cazares*, 121 F.3d 1241, 1247 (9th Cir. 1997); *See also United States v Paulus,* 419 F.3d 693, 699 (7th Cir. 2005); *United States v Taffe*, 36 F.3d 1047, 1049 (11th Cir. 1994); *United States v Johnson*, 888 F.2d 1255, 1256 (8th Cir. 1989).

Here, the indictment lists eight firearms. But, careful review of the plea transcript reveals that Defendant, through counsel, stated that the number of guns he (actually or constructively) possessed is disputed. Without protest from the Government, Defendant's attorney asserted that Defendant intended to argue to the Court whether one of the eight guns should be counted:

**The Court:**   Was the possibility of a Rule 11 on the table, Mr.

> Densemo?
>
> **Mr. Densemo (for Defendant):** Yes, Your Honor, it was. There was only a slight difference between the offer being made by the Government and our decision to plead without a Plea Agreement. We couldn't come to agreement about one particular firearm, whether it should be counted, and so we're going to argue to the Court that it shouldn't be included.

Plea Transcript ("Tr") at p. 8. The Government later acknowledged the dispute:

> **The Court:** And have you calculated what the potential guideline range is?
>
> **Mr. Varner (for the Government):** Our best estimate, Your Honor, was a Guideline range of 37 to 46 months?
>
> **The Court:** And does that depend on the number of firearms?
>
> **Mr. Densemo:** Yes.
>
> **Mr. Varner:** It does. The Indictment lists eight firearms, Your Honor, and at that point they were all operational, it would be counted. There's a debate about one of those. So, if its seven, it's a lower Guideline range; I can't tell you exactly.

*Id* at pp. 12-13. Also, consistent with a written statement Defendant gave when arrested, at the plea hearing Defendant only admitted knowledge of two of the weapons, one of which was found under a mattress in the room where he slept.[1]  *Id* at pp. 18-20.

It is apparent from the parties' exchanges with the Court during the plea hearing that they agreed that the number of guns attributable to Defendant for sentencing purposes would be decided at a later date. Therefore, Defendant is not precluded from raising the issue at this time.

---

[1] In a letter to the probation department, Defendant's attorney says that he knew about a third gun and told agents where they could be found. But, there is no evidence to support the assertion and it is contrary to Defendant's written and oral statements.

3

### B. The Government Failed to Establish Actual or Constructive Possession of Eight Firearms

The burden is on the Government to prove by a preponderance of evidence that a sentencing enhancement applies to increase the advisory guideline range. *United States v Barton*, 455 F.3d 649, 658 (6th Cir. 2006), *cert. den.,* 127 S.Ct. 748 (2006). The Government only presented evidence that Defendant had actual or constructive possession of three of the firearms.

The agents found three firearms under the mattress in Defendant's room, one in the kitchen cupboard, three in a bedroom occupied by Defendant's nephew, DeAndre Williams, and one in the basement. In his written statement and during the plea colloquy, Defendant only admitted that he was aware of two of the guns, one under his mattress and another in the closet of a bedroom occupied by his nephew. The Government states in its brief that Defendant told agents about two guns under his mattress and two in his nephew's room, and that he put the guns under his mattress. But, the Government does not present any evidence to support its allegation.

The home where the guns were found belonged to Defendant's parents who are deceased (mother in 2000; father in 1990). Defendant has lived there for 32 years, but there is no evidence regarding who currently owns the property. At the time of the raid, Defendant was living at the home with his nephew, Williams, and a cousin, Greg Thrift.

Defendant stated during his plea that his father and two deceased brothers were hunters. He indicated that he believed all of the guns belonged to his father, but that his

brothers bought guns as well.[2]  Tr. at p. 17.  He also indicated that either his father or mother placed one of the firearms under his mattress and that it is an antique (manufactured in 1903 according to Defendant in his sentencing memorandum).  Tr. at p. 20; Def. Br. at p. 5.

The Government contends that Defendant had actual and constructive possession of all of the weapons found because he lived there and, in response to the Government's question during the plea, admitted that he had access to all of the firearms in the house.  The Government characterizes Defendant's statements as an admission that he had access and "dominion" over the house and the guns.  To the extent others may have had control over some or all of the weapons, the Government further contends that Defendant can be charged with joint possession.  In support of these assertions, the Government cites *United States v Craven*, 478 F.2d 1329 (6th Cir. 1973), *abrogated on other grounds by, Scarborough v United States*, 431 U.S. 563 (1977), *United States v Clemis*, 11 F.3d 597 (6th Cir. 1993), and Sixth Circuit Pattern Jury Instructions (Criminal) §§2.10, 2.11, 12.01.

The Government has not proven that Defendant exclusively or jointly possessed all eight firearms.  "Possession may be either actual or constructive and it need not be exclusive but may be joint."  *Craven*, 478 F.2d at 1333.  "Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive

---

[2]The Government characterizes Defendant's assertion that all of the guns belonged to his father as perjury, because records show that one of the guns was purchased after Defendant's father died.  But, as stated, Defendant's testimony was somewhat equivocal.  He said that, "to [his] knowledge" all of the guns belonged to his father, but that his brothers bought guns as well.  Tr. at p. 17.

possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.*

The Government does not cite authority which indicates that evidence that a person resides in a home and has "access" to weapons in the home is alone sufficient to establish that the person has "dominion" over the home and all of its contents. Essentially, the Government equates presence and access with possession. This argument is directly contrary to the Government's own authority. In fact, the Sixth Circuit pattern instructions defining actual, constructive and joint possession, cited by the Government, explicitly state that "just being present where something is located does not equal possession." Sixth Circuit Pattern Jury Instructions (Criminal) §§2.10, 2.11.

Likewise, in *Craven* the Court stated that Defendant's admitted constructive possession of the house where three guns and a silencer were found was alone insufficient to establish possession of all of the contents of the house. 478 F.2d at 1333. Rather, the Court found that it was the additional evidence tying the defendant to the weapons which established constructive possession, namely: 1) one gun was found in the master bedroom which also contained monogrammed men's shirts bearing the Defendant's initials; 2) a roofing contractor testified that he saw Defendant in the master bedroom eight days prior to the raid sitting in bed in his underwear, which established that he slept there and had constructive joint possession of the room; 3) when asked about the guns during his booking, Defendant told two agents that he collected guns; and 4) the roofing contractor saw a gun resembling one of the weapons on the bed near

6

Defendant.

Finally, in *Clemis*, the Court stated that "constructive possession . . . exists when the person has dominion over the premises where the firearm is located." 11 F.3d at 601. But, the two guns with which the Defendant was charged were found in a home he owned, in the master bedroom, inside a nightstand which also contained men's personal items.

At best, the Government established by a preponderance that Defendant actually or constructively possessed the three weapons found in his room. Since Defendant admitted that he was aware of one of the three guns found under his mattress, the Court can infer that he was also aware of two others found in the same location in a room over which he indisputably had dominion and control. But, three of the remaining five guns were found in a room occupied by Defendant's nephew, and the last two were found in common areas--the kitchen and the basement. Beyond the fact that Defendant lived in the home and had access to the areas where the remaining five guns were found, there is no evidence that he: 1) was even aware of four of the guns (he admitted being aware of one of the guns in his nephews' closet); 2) had "immediate possession or control" over any of them; or 3) "*knowingly* ha[d] the power *and* the *intention* at a given time to exercise dominion and control" over them.

For these reasons, the Government has not established by a preponderance that Defendant actually or constructively possessed more than three of the eight firearms found. Therefore, the Court declines to impose the 4-point offense level enhancement recommended by the probation department.

The Court agrees that there is sufficient evidence to establish by a

preponderance that Defendant possessed three of the weapons--the ones under his mattress and in his own bedroom. Thus, the offense level must be increased by 2 points. U.S.S.G. § 2K2.1(b)(1)(A). With this increase, Defendant's offense level is 19 and the applicable Guideline range is 30-37.

### C. Downward Departure/Variance

Pre-*Booker*,[3] the Sentencing Guidelines limited the types of factors a district court could consider in fashioning an appropriate sentence and mandated the extent to which a factor had to be present to warrant departure. *See United States v Crouse,* 145 F.3d 786, 789-790 (6th Cir. 1998). *Booker*, however, rendered the Guidelines advisory, requiring only that courts consider the applicable guideline range and the statutory concerns set forth at 18 U.S.C. §3553(a) and impose a sentence that takes into account the purposes set forth there. *Booker,* 540 U.S. at 245. A district court must still consider whether a downward departure is warranted as part of its consideration of the appropriate Guideline range. *United States v McBride*, 434 F.3d 470, 475-476 (6th Cir. 2006). But, it is now within the district court's discretion to decide what issues to consider and the weight they should be given under §3553(a), subject to review only for reasonableness. *Booker*, 540 U.S. at 261; *United States v Webb*, 403 F.3d 373, 383 (6th Cir. 2005), *cert den.,* 126 S.Ct. 1110 (2006).

Defendant asks the Court to consider multiple factors; specifically, his strong family ties and responsibilities, his employment history, his minor criminal history, his personal and family medical condition, his volunteerism, his education and the fact that

---

[3]*United States v Booker,* 543 U.S. 220 (2005).

8

he does not depend on criminal activity for his livelihood.  Collectively, Defendant contends that these factors form a compelling basis for the Court to impose a sentence which varies from the Guidelines.

### i. Family Ties and Responsibilities

Under the Guidelines, a defendant's family ties and responsibilities "are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. §5H1.6.  But, the Sixth Circuit held that a departure is warranted when there are "extraordinary family circumstances." *See United States v Tocco*, 200 F.3d 401, 435 (6th Cir. 2000).

Defendant has not identified any extraordinary circumstances which warrant either a downward departure or a variance.  Defendant has three minor children for whom he pays child support.  Each child lives with his respective mother and there is no indication that any of them are solely dependent on Defendant for support.  Defendant also assists his fiancé and one sister with their household expenses (he apparently alternates living with the fiancé and sister), but, again, there is no indication that either woman is solely dependent on Defendant's contribution.  PSIR at ¶¶34-37,46.

### ii. Employment History

Under the Guidelines, a defendant's employment record is "not ordinarily relevant," except in exceptional cases.  U.S.S.G. §5H1.5.; *United States v Kuhn*, 351 F.Supp.2d 696 (E.D. Mich. 2005).  And, in *Kuhn*, the Court found that work history alone is insufficient even if exceptional.  *Kuhn*, 351 F.Supp. at 706 (defendant's 29 year work history was insufficient by itself to warrant a departure, but a departure was warranted

9

when defendant's work history was considered along with his service to the community).

Defendant currently has two jobs and has been continuously employed at least since 1996. PSIR at ¶¶44-45. This alone is insufficient for a downward departure. But, it does merit favorable consideration under §3553(a)(1), with regard to Defendant's history and characteristics.

Defendant also presents evidence of his volunteer efforts at the Wonderland Child Care Learning Centers over the last six years serving as a handyman, repairing equipment, and volunteering his efforts on behalf of children inside the classroom.

### iii. Criminal History

Defendant only has one prior criminal conviction in 2000. Departure under the Guidelines is not warranted because Defendant's criminal history is already taken into account. *See United States v Todd*, 920 F.2d 399, 409 (6th Cir. 1990). However, the Court is not precluded from weighing this fact in its assessment of Defendant's history and characteristics under §3553(a)(1).

### iv. Medical Condition

Under the Guidelines, a defendant's physical condition is not relevant unless the defendant's condition constitutes an extraordinary physical impairment. U.S.S.G. §5H1.4. However, under §3553(a)(2)(D), the Court must ensure that the sentence imposed provides a defendant with needed medical care.

Defendant has high blood pressure which is regulated through daily medications. He contends that it would be far less costly to impose a sentence of home confinement

than to incarcerate him given his medical history and that of his family.

It is not clear what family medical history Defendant asks the Court to consider or why. And, Defendant's condition does not merit a downward departure or favorable consideration under §3553(a)(2)(D), since he has not established that his condition is extraordinary or that the Bureau of Prisons could not adequately meet his needs.

    **v.**    **Education**

A defendant's educational and vocational skills are not ordinarily relevant under the Guidelines. U.S.S.G. §5H1.2. But, Defendant does not ask the Court to consider his lack of an education (11th Grade; no GED) as a basis for downward departure or a variance. Rather, he contends that the Court should consider that he has maintained a decent standard of living for the past ten years despite his lack of a formal education. Therefore, although the Court must weigh its obligation to provide needed educational or vocational training under §3553(a)(2)(D), Defendant asserts that there is no need to incarcerate him for that purpose.

    **vi.**    **Dependence on Criminal Activity for Livelihood**

U.S.S.G. §5H1.9 states "[t]he degree to which a defendant depends upon criminal activity for a livelihood is relevant in determining the appropriate sentence." This factor is typically applied in support of an upward departure. *See United States v Guarin*, 898 F.2d 1120, 1122 (6th Cir. 1990). Here, Defendant offers it for the opposite proposition. He asserts that he is not a recidivist who supports himself through criminal activity. He contends that his work history demonstrates as much. Therefore, he argues that the Court should find that it is unlikely that he would continue to engage in

criminal activity as a means of supporting himself and his family.

Defendant does not cite any authority that his lack of dependence on criminal activity is grounds for downward departure. But, the Court may under §3553(a)(2)(C) consider the extent to which it reflects on whether he is likely to commit further crimes.

### vii. Totality of Circumstances

Defendant seems to argue that, even if none of the factors individually warrants a departure or variance, there are compelling grounds when the factors are considered in the aggregate. Under the Guidelines, factors that may be insufficient when considered individually may justify a departure when considered in conjunction with other factors. *United States v Coleman,* 188 F.3d 354, 361 (6th Cir 1999). And, it is implicit that the Court must consider and collectively weigh any facts which impact upon the factors set forth in §3553(a).

Even when all of the asserted factors are considered in the aggregate, Defendant has not established that his personal history or circumstances are sufficiently exceptional to warrant a downward departure. But, a variance is reasonable because Defendant's work history, volunteerism, the unlikeliness of recidivism, his limited criminal history and the nature and circumstances of the offense (there is no evidence Defendant possessed or used the guns in furtherance of other criminal activity), all suggests that the applicable Guideline range is greater than necessary to accomplish the dictates of §3553(a).

Accordingly, the Court sentences Defendant to one day time served, and three years of supervised release with the first twelve months to be served in a community corrections center.

**IT IS SO ORDERED.**

<u>**S/Victoria A. Roberts**</u>
**Victoria A. Roberts**
**United States District Judge**

**Dated: May 25, 2007**

---

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 25, 2007.**

<u>**S/Carol A. Pinegar**</u>
**Deputy Clerk**

---